

# NUMBER 13-11-00449-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WILFRED HEWITT,**  **Appellant,**

**v.**

**BILLY F. ROBERTS**
**AND MARY D. ROBERTS,**  **Appellees.**

---

### On appeal from the 413th District Court
### of Johnson County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Wittig[1]
### Memorandum Opinion by Justice Wittig

Wilfred Hewitt, appellant, challenges the summary judgment granted in favor of

appellees Billy F. Roberts and Mary D. Roberts.  In his first issue, Hewitt argues the trial

court erred by entering summary judgment based entirely on improper legal conclusions

---

[1] Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (West 2005).

found in admissions deemed against him. In his second issue, he argues that the trial court abused its discretion by refusing to withdraw deemed admissions that were "never served on Hewitt." Hewitt does not challenge the declaratory judgment against him nullifying his option to purchase the Roberts' home and declaring they have clear title to the property. We affirm.

## I. BACKGROUND

The Roberts filed multiple claims against Hewitt for violations of the DTPA, breach of contract and fiduciary duty, fraud, fraud in a real estate transaction, negligence, negligent misrepresentation, money had and received, and declaratory judgment. Hewitt filed a pro se answer on December 7, 2009, and listed his address as 1311 N. Robinson, Cleburne, Texas—the same address where Hewitt was served with process. At the summary judgment hearing, the Roberts elected two remedies, DTPA and declaratory judgment. The motion for summary judgment relied upon 143 deemed admissions, the Roberts' affidavit, an attorney's fees affidavit, and other supporting documents attached to the motion. On the day of the summary judgment hearing, Hewitt belatedly filed answers to the deemed admissions mostly denying the requests; the late responses were filed without leave of court. After the trial court granted the summary judgment and entered judgment, Hewitt filed a motion to withdraw the deemed admissions and a motion for new trial. The trial court denied the combined motions.

In Hewitt's post judgment affidavit, he swore he was "never served" with a copy of the Roberts' requests for admission. Hewitt admits his office was located at 1311 N. Robinson, in Cleburne, but asserted that he moved to a new location in Fort Worth in May 2010. He states he "mistakenly failed to submit a forwarding address request" to

2

the postal service. The record also reflects Hewitt failed to notify either the court or counsel for the Roberts of his stated change of address. Hewitt avowed that he happened to be at his old Robinson address in January 2011 to meet a client, when he found a copy of the Roberts' motion for summary judgment which included the requests for admissions. This was the first time he saw the requests for admissions, according to the affidavit.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment under rule 166a(c) is proper when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). When the trial court grants the judgment without specifying the grounds, we affirm the summary judgment if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in his favor. *Id.* at 549.

We review the trial court's grant or denial of a motion to withdraw deemed admissions under an abuse of discretion standard. *Wheeler v. Green,* 157 S.W.3d 439, 443 (Tex. 2005). The trial court has broad discretion in such matters, but they cannot

exercise that discretion arbitrarily, unreasonably, or without reference to guiding rules or principles.  *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996).

## III. DISCUSSION AND ANALYSIS

### A. Withdrawal of Admissions

We first address Hewitt's argument that the trial court abused its discretion by refusing to withdraw the deemed admissions.  The Roberts' requests for admissions were properly mailed to the last known and only address provided by Hewitt on September 10, 2010, by both certified mail and regular mail.  This Robinson Street address was the same address used to serve Hewitt with the original petition.  It is also the same address that Hewitt admitted using in January 2011 to see a client and where he received his copy of the Roberts' motion for summary judgment filed on January 4, 2011.  The Roberts argue that Hewitt created the very problem he now complains of, and did not inform the post office, the court, or Roberts' counsel of any new or other address.  The procedural fact question presented to the trial judge was whether Hewitt's failure to do so was an accident or mistake, or the result of conscious indifference or an intentional act.

Hewitt's burden on his motion to withdraw the deemed admissions was to show: (1) good cause; and (2) no undue prejudice.  *Wheeler,* 157 S.W.3d at 442.  To establish good cause, the party seeking to withdraw the deemed admissions must show that the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake.  *Id.*; *see also Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687–88 (Tex. 2002).  In *Wheeler*, the appellant calculated her dates incorrectly, but this was not the result of intent or conscious indifference.  *Wheeler,* 157

4

S.W.3d at 442. While she answered and mailed her responses within twenty-seven days from receipt, the "mailbox rule" made her two days late. *Id.* at 441; *see* TEX. R. CIV. P. 4.

In his affidavit, Hewitt swore he moved his office from Robinson Street in Cleburne to Fort Worth in May 2010. Hewitt states he moved his office again in October 2010 to Joshua, Texas. Then in early January 2011, he nevertheless used the same Robinson Street office to see a client and discovered the Roberts' motion for summary judgment, which included a copy of the requests for admissions. In mid-January 2011, he finally submitted a forwarding address to the postal service.

Hewitt answered the admission requests on February 18, 2011, the day of the summary judgment hearing, without first obtaining leave of court or filing a motion to set aside the deemed admissions.[2] Hewitt stated: "I was never served with a copy of Billy F. Roberts and Mary D. Roberts' requests for admission in this case. I did not refuse delivery of any mail or deliveries from the Roberts or their attorneys." He also stated that on several occasions he found his mail opened prior to its receipt. Occasionally, he did not receive items purportedly mailed to him or which were opened giving rise to his opinion his mail was sometimes stolen or intercepted. Hewitt states that he "mistakenly failed" to submit a forwarding address to the postal service and the first time he ever saw the Roberts' requests for admission was early January 2011. The evidence submitted by the Roberts indicated that the requests for admissions in the envelope sent certified mail was marked "unclaimed" but was properly addressed. Hewitt did not directly or openly address whether he actually received the certified mail notice or whether he received or opened the set of requests for admission sent to his Robinson

---

[2] Hewitt's late filed responses did not contain a certificate of service.

Street address by regular mail.[3]   Hewitt did admit actual notice and receipt of the requests when he visited his office early January 2011.

Hewitt cites *Payton v. Ashton*, 29 S.W.3d 896, 898 (Tex. App.—Amarillo 2000, no pet.), for the proposition that the requests for admission may not be deemed if service was not perfected.   Indeed, in *Payton*, the certified mail was marked "unclaimed," however we note differences between that case and the one before us.  In *Payton*, "[w]hether they were unclaimed because Ashton opted not to receive them (intentionally or otherwise) or whether he even knew of their existence went undeveloped."   *Id.* 898–99.   *Payton* also observes that constructive notice of a document can be imputed to one where there exists evidence that the person has engaged in "selective refusal/acceptance" of certified mail, citing *Gonzales v. Surplus Ins. Serv.*, 863 S.W.2d 96, 101–02 (Tex. App.—Beaumont 1993, writ denied).  The case goes on to hold that because the requests were returned unclaimed, that constituted some evidence upon which the trial court could have concluded that Ashton did not receive them.   *Payton*, 29 S.W.3d at 898–99 (citing *Gonzales*, 863 S.W.2d at 101 (stating that the determination of a procedural fact, such as whether one received notice, lies within the sound discretion of the trial court)).

Here, the trial court, charged with finding the procedural facts, implicitly determined that Hewitt received notice or either intentionally or with conscious indifference failed to respond.  While there was some evidence Hewitt did not receive or was not served with the certified mail package, review of the record reveals that Hewitt

---

[3] While Hewitt avers he did not "see" the requests until January 2011, neither he nor his attorney present the type of unequivocal testimony found in most of the cases cited by him in our discussion below.   Hewitt does not say he never received any notice or that he did not actually receive the admissions until January 2011.

failed in his burden to explain his presumed receipt of the requests for admission sent by regular mail. Texas Rule of Civil Procedure 21a states that service by mail is "complete upon deposit of the paper, enclosed in a postpaid, properly addressed wrapper, in a post office or official depository under the care and custody of the United States Postal Service." TEX. R. CIV. P. 21a. It also provides that "nothing herein shall preclude any party from offering proof that the notice or document was not actually received . . . ." *Id.* Hewitt's affidavit is carefully crafted to indicate that he was not "served" with the requests, but does not unequivocally state he did not receive either the admissions by certified mail or regular mail. He swore that he "mistakenly failed" to forward his mail, while at the same time he admitted using the identical address on Robinson Street for business in January 2011.

Hewitt makes no proffer of what his claimed mistake was, i.e., he relies upon a conclusory, self-serving statement and offers no proof of why or how he made a mistake. Though he claims people might have been opening and stealing his mail, he neglects to forward his mail from his clients, the Internal Review Service, or anyone else, and abandons his mail for months to possible thieves and miscreants while moving to Fort Worth in May 2010, and then to Joshua in October 2010. Nor does Hewitt fully explain how he happens to still be using his Robinson Street office in January 2011. Did he own the building? Did he still lease space? How often did he pick up his mail at 1311 N. Robinson? The trial judge certainly had contradictory evidence before him that could seriously challenge the credibility of the affiant. When the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of its judgment. *Am. Type Culture*

7

*Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002).  When a trial court is presented with conflicting evidence, it may believe one witness and disbelieve others as well as resolve inconsistencies in testimony.  *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Viera v. Viera*, 331 S.W.3d 195, 210 (Tex. App.—El Paso 2011, no pet.).  Hewitt's credibility was clearly at issue.  Some evidence of intentional conduct or conscious indifference appears in the record sufficient to justify the trial court's actions in denying Hewitt's motion.  *See Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011) (good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference).

Hewitt also cites *Etheredge v. Hidden Valley Airpark Ass'n*, 169 S.W.3d 378, 382 (Tex. App.—Fort Worth 2005, pet denied).  The Fort Worth court held that even though the presumption of receipt was rebutted by evidence that the notice of hearing was returned "unclaimed," Hidden Valley Airpark presented no evidence that Etheredge dodged or refused delivery of certified mail, and constructive notice of the summary judgment hearing could not be imputed to Etheredge.  *Id. (citing Pessel v. Jenkins*, 125 S.W.3d 807, 810 (Tex. App.—Texarkana 2004, no pet.) (holding that trial court erred in determining that defendants received notice of trial setting when notice was returned unclaimed and plaintiffs offered no proof of "selective acceptance/refusal" of certified mail)).  *Etheredge* and *Pessel* are distinguishable on the facts.   In those cases, there was neither proof that the parties continued to use their office delivery addresses in question nor that they actually received court notices at the same delivery addresses.  Further, Hewitt did not deny receipt of regular mail notice sent to him.

Hewitt next argues from a Houston court's opinion: *Approximately $ 14,980.00 v. State*, 261 S.W.3d 182, 189 (Tex. App.—Houston [14th Dist.] 2008, no pet.). *State* held that not only was the certified mail package returned "unclaimed" but also the appellant's attorney, unlike Hewitt, directly testified to not receiving the notice. *Id.* Thus, the appellant rebutted the presumption of receipt of actual notice. *Id.*; *see also Rabie v. Sonitrol of Houston, Inc.*, 982 S.W.2d 194, 197 (Tex. App—Houston [1st Dist.] 1998, no pet.) (holding defendant rebutted presumption of service by asserting under oath that he never received notice of certified letter from post office and by presenting evidence that post office's attempts to deliver certified mail failed). Such is not the case here. While Hewitt claimed he was not "served" and did not "see" the requests for admission, neither he nor his lawyer claimed they never received either the certified notice or regular mail package, which was not returned to the sender. Furthermore, Hewitt admitted he received the admissions the first week of January 2011, but did not respond to the admissions until the morning of the summary judgment hearing on February 18, 2011.

Hewitt then cites *Chambers v. Pruitt*, 241 S.W.3d 679, 685 (Tex. App.—Dallas 2007, no pet.), holding that there was no evidence the admissions were properly served and received. In *Pruitt*, the request for admissions sought to be admitted into evidence, unlike our case, was not signed, nor was there a signed certificate of service. *Id.* Chambers told the court she sent the document to Pruitt by certified mail and received a return receipt green card marked "refused." *Id.* Pruitt testified she *did not receive* the admissions and thus, there were no deemed admissions, and the trial court did not abuse its discretion when it refused to admit the document into evidence. *Id.* Here,

9

Hewitt admits receiving the requests for admission at least by January 2011, and also admitted using the same Robinson Street address as an office while claiming it was no longer his office.

Finally, Hewitt argues that "the undisputed evidence" established Hewitt's failure to respond was not intentional or the result of conscious indifference, citing *Salazar v. Collins*, 255 S.W.3d 191, 196 (Tex. App.—Waco 2008, no pet.) (stating that good cause is established by a showing that the failure to respond to the request for admissions was an accident or mistake, not intentional or the result of conscious indifference). In *Salazar*, unlike our case, the attorney general's office admitted receiving the admissions but stated that they were inadvertently misplaced after they were received and were never routed to the particular attorney assigned to that case. *Id.* In our case, there was evidence that properly mailed requests were sent to Hewitt at the address he designated. He did not deny receiving the admissions sent by regular mail. He admitted receiving a set of admissions along with the motion for summary judgment and still did not timely respond or seek leave to file late responses to the requests. While Hewitt argued "mistake," no proof of mistake was offered. And while claiming to have moved his Cleburne office without forwarding his mail, he still received correspondence in this case at that same address and admitted using the Cleburne office in his work.

We further note that Hewitt, by his own admission, knew of his "mistake" in early January 2011, well before the February 18 hearing, and could have responded to the Roberts' motion, or sought leave to file late responses, but because he did not, he waived his right to raise the issue thereafter. *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 798 (Tex. 2008). The high court noted that under special circumstances, a

10

party could bring a request to withdraw deemed admissions for the first time in a motion for new trial. *Id.* (citing *Wheeler,* 157 S.W.3d at 442 (stating that Wheeler did not waive her complaint regarding withdrawal of the deemed admissions by presenting it for the first time in her motion for new trial because "nothing in this record suggests that before summary judgment was granted, [Wheeler] realized that her responses were late, that she needed to move to withdraw deemed admissions, or that she needed to file a response to the summary judgment raising either argument.")) "[E]quitable principles allowing these arguments to be raised in a motion for new trial do not apply if a party realizes its mistake before judgment and has other avenues of relief available." *Id.*

We conclude the trial court did not abuse its discretion by refusing to permit the withdrawal of the deemed admissions. *See Wheeler,* 157 S.W.3d at 443; *see also Weaver,* 262 S.W.3d at 798. A decision is not considered an abuse of discretion if supported by any theory appearing in the record. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990). We overrule this issue.

**B. Admissions Void**

Hewitt also argues that the requests for admission are void on their face and cannot be used against him as a matter of law. We disagree. Hewitt's central argument is that most of 143 requests for admission do not address disputed facts but merely mirror the elements of Roberts' claims. Hewitt is correct that many of the requests mirrored the DTPA elements and were improper legal conclusions, e.g., "Admit you engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the DTPA." Hewitt argues that because certain deemed admissions were purely questions of law, they are improper summary judgment evidence, citing

11

*Cedyco Corp. v. Whitehead*, 253 S.W.3d 877, 881 (Tex. App.—Beaumont 2008, pet denied). We agree in principle. However, as the Roberts argue, a request for admission may ask a party to admit or deny an issue of fact or a mixed issue of fact and law, but not a purely legal issue, citing *Ft. Bend Central Appraisal District v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 858 (Tex. App.—Texarkana 1992, writ denied); *see also Marino* 355 S.W.3d at 632 (admissions may be used to elicit "statements of opinion or of fact or of the application of law to fact" (citing TEX. R. CIV. P. 198.1).

Indeed the rule itself states:

> Request for Admissions. A party may serve on another party - no later than 30 days before the end of the discovery period—written requests that the other party admit the truth of any matter within the scope of discovery, *including statements of opinion or of fact or of the application of law to fact*, or the genuineness of any documents served with the request or otherwise made available for inspection and copying. Each matter for which an admission is requested must be stated separately.

TEX. R. CIV. P. 198 (emphasis added).

The Roberts argue many of the requests fall within the rule including: requests numbers 3–7, 10, 11, 13, 15, 18, 27–29, 32–34, 36, 37, 46, 47, 62, 63, 66, 109, 140, and 143. For example, requests 3–7 asked Hewitt to admit he was not a licensed Texas CPA, that he represented he was qualified to provide tax advice and planning, that he was qualified to prepare federal tax returns, that he used Mary D. Roberts's name to acquire electric service at his office, and that he used Billy Roberts's name to charge items at Lowes. We have reviewed each of the requests enumerated in this paragraph and conclude they are not prohibited questions of law.[4]

---

[4] A few of the requests would have been subject to a "multifarious" objection, but no such objection was timely made nor is the matter raised by appellant.

12

However, even if some of the requests were prohibited questions of law, the Roberts' motion also relied upon the affidavit of Mrs. Roberts and supporting documents as a basis for their summary judgment motion. The affidavit established that the Roberts were consumers of services from Hewitt, that he misrepresented his status as a Texas licensed CPA, that Hewitt used Billy Roberts' name to acquire electric service and used one of their names to charge items at Lowes, improperly rendered services and induced the Roberts to enter a scheme giving Hewitt the option to purchase real estate belonging to the Roberts in Cleburne. Hewitt then collected $4,515 in rents from the Roberts for their property. Hewitt threatened to falsely report that the Roberts received income from Hewitt if they did not convey the Cleburne property to him. Hewitt also appropriated identity information, bank, credit and other financial information from the Roberts.

The summary judgment proof supports violations of the DTPA. A consumer may bring a DTPA cause of action for either a violation of section 17.46(b) of the DTPA (the so-called "laundry list") relied on by the consumer to the consumer's detriment or for an unconscionable action or course of action if the violation or action "constitute[s] a producing cause of economic damages or damages for mental anguish." TEX. BUS. & COM. CODE ANN. § 17.50(a)(1), (3) (West 2011). The "laundry list" prohibits various types of misrepresentations. *See id.* § 17.46(b). The DTPA also defines an unconscionable action or course of action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5). Under section 17.46 (a), false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are

13

declared unlawful and are subject to action by the consumer protection division under sections 17.47, 17.58, 17.60, and 17.61 of the civil practice and remedies code. *Id.* Sub-section (b) includes, but is not limited to the following acts:

(1)     passing off goods or services as those of another;

(2)     causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3)     causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4)     using deceptive representations or designations of geographic origin in connection with goods or services;

(5)     representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.

*Id.* § 17.46. Summary judgment proof also included an affidavit supporting the attorney's fees awarded in the amount of $6,500.00 and proof supporting the treble damages found in the amount of $33,035.46.

The trial court, as well as this court, must accept as true the clear, direct, and positive evidence of an undisputed affidavit, even of a party's agent. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 270 (Tex. 1992) (citing *Americana Motel, Inc. v. Johnson*, 610 S.W.2d 143 (Tex. 1980) (uncontroverted testimony by an interested party may support summary judgment when testimony is clear, direct, and positive); *Whitehead v. Julian*, 476 S.W.2d 844, 845 (Tex. 1972) (uncontroverted affidavit must be accepted as true); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965)).

Hewitt, in his reply brief, states that Roberts' attorney only argued the deemed admissions. This is factually inaccurate because in both the Roberts' written motion and in oral argument they pointed to "evidence that is attached in the addendum," the Roberts' affidavit supporting damages, and the affidavit supporting attorney's fees. Further, Roberts' attorney asked the court to consider "the summary judgment evidence including the discovery with deemed admissions. . . ." Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Hewitt also contends a party must specifically identify the supporting proof relied upon, citing *Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd*., 190 S.W.3d 742, 746 (Tex. App.—San Antonio, 2005 no pet.). Notwithstanding the stated principle, the *Gonzales* court reviewed the entire record and concluded the expert did not provide the underlying facts to support his conclusion. *Id*. The only evidence of an alleged defect was the expert's statements that "an electrical failure occurred at the socket base/switch assembly" and "the fire resulted from a resistive heating failure at the lamp socket/switch assembly terminal screws to which the lamp cord is attached." *Id.* "These statements are conclusory and, therefore, constitute no evidence." *Id.* at 746–47. In *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 81 (Tex. 1989), the Allred deposition to which the motion for summary judgment specifically referred was not part of the record on appeal, and the record did not reflect that it was or could have been

15

considered by the trial court. The movant did not present to the trial court sufficient evidence to show its claim of "title" or "color of title." *Id.* The motion did no more than refer to whatever may have been "on file" and such a general reference to a voluminous record which does not direct the trial court and parties to the evidence on which the movant relies is insufficient. *Id.* We have already noted that the Roberts specifically referenced Mary Roberts' affidavit as well as the attorney's fees affidavit. Neither the trial court nor this court was presented with voluminous records, reports, and depositions described in the cited cases. We conclude this argument is without merit.

Hewitt complains it is difficult to see how the Roberts' affidavit can prove his subjective knowledge and intent. To the contrary, the affidavit lays out Hewitt's willful conduct when he misrepresented his status as a Texas CPA, he used their name to charge items at Lowes, induced them to enter a scheme to acquire an option on the Roberts' property, collected rents, and threatened to falsely report them. Hewitt also refused to return identity and financial information to the Roberts. Virtually all, if not all of these purposeful actions are typically performed with knowledge and intent. Hewitt points to no evidence to the contrary.

Hewitt also argues that the affidavit consists primarily of subjective conclusory statements and opinions by an interested party and is not competent evidence as a matter of law, citing *Harley-Davidson Motor Co. v. Young*, 720 S.W.2d 211, 213 (Tex. App.—Houston [14th Dist.] 1986, no writ) (holding that statements of opinions and conclusions made in an affidavit are not competent summary judgment proof and should be disregarded in determining the sufficiency of proof to support the summary judgment). "A conclusory statement is one that does not provide the underlying facts to

16

support the conclusion." *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ). Hewitt does not cite to any statement he argues to be conclusory. To the contrary, Mary Roberts swore that she had personal knowledge and gave specific details of the couple's dealings with Hewitt described above.

We overrule this issue.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

Don Wittig<br>
Justice

Delivered and filed the
31st day of January, 2013.