Marsha **CHAMBERS**, Appellant

v.

James **PRUITT** and Angela Pruitt, Appellees.

No. 05–06–01302–CV.

Court of Appeals of Texas, Dallas.

Dec. 11, 2007.

Marsha Chambers, Kaufman, TX, pro se.

James Pruitt and Angela Pruitt, Kaufman, TX, pro se.

Before Justices RICHTER, FRANCES, LANG–MIERS.

## OPINION

Opinion by Justice RICHTER.

■ This case involves an alleged oral contract for the sale of land. In the court below, Marsha Chambers asserted, *inter alia,* a breach of contract claim against James and Angela Pruitt. Following a bench trial, the court entered a take-nothing judgment in favor of the Pruitts. Chambers, pro se, challenges the trial court's judgment in twelve issues.[1] Finding no reversible error, we affirm the judgment of the trial court.

### Background

In August 2004, the Pruitts sold Chambers a mobile home. Initially, the mobile home was to be removed from the Pruitts' land, although the parties disagree as to when the removal was to occur. By October 2004, the trailer had not been removed. The Pruitts offered to sell the lot on which the trailer was situated to Chambers. Chambers paid the Pruitts a $2400 down payment. The Pruitts prepared a contract for deed, but Chambers refused to sign it. Chambers prepared her own proposed contract, but the Pruitts refused to sign. It is undisputed that a contract for the sale of the lot was never signed.

Although the contract to purchase the land was never consummated, Chambers

---

1. Although Chambers appears before us pro se, litigants choosing to appear pro se are held to the same standards applicable to licensed attorneys. *See Chandler v. Chandler,* 991 S.W.2d 367, 379 (Tex.App.-El Paso 1999, pet. denied).

and the trailer remained on the Pruitts' land. The day after the Pruitts refused to sign her proposed contract, Chambers initiated this action with a document entitled "Plaintiff's Original Petition for Breach of Contract." The case was filed in the statutory county court of Kaufman county (the county court action). All parties appeared pro se. The Pruitts subsequently filed an eviction action against Chambers in the Justice of the Peace court (the JP action). The Pruitts were awarded a writ of possession and a judgment for back rent. Chambers appealed and the judgment in the JP action was affirmed.

Chambers filed a "Motion for Emergency Injunction/Temporary Restraining Order" in the county court action. The motion stated a temporary restraining order (TRO) was necessary to prevent execution of the writ of possession issued in the JP action. In support of her request, Chambers claimed: "the judge made an error of law in stating that all real estate transactions must be in writing. An oral contract is enforceable & apparently the ... judge did not know this." There is no order granting or denying a TRO in the record, nor is there a record of a hearing. The record does show Chambers was ultimately removed from the property and the land was sold to another purchaser. The breach of contract claim was subsequently tried to the court and the court entered a take-nothing judgment in favor of the Pruitts.[2] This appeal of the judgment in the county court action followed.

## Discussion

### A. Injunctive Relief

In her first issue, Chambers states:

Does a Kaufman County Court at Law Judge have the discretion to change the party's status quo and refuse a TRO Motion by citing lack of original service even after the [Pruitts] have filed an answer and are present at the TRO hearing.

■ We construe this issue to assert the trial court erred by refusing to enter a TRO. As a reviewing court, we only consider facts that appear in the record. *See* TEX.R.APP. P. 31.2. Because there is no order granting or denying a TRO in the record, there is nothing presented for our determination. Moreover, even if there were such an interlocutory order, it would have merged into the final judgment. *See Douglas v. Am. Title Co.*, 196 S.W.3d 876, 883 n. 6 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Chambers's first issue is overruled.

### B. Jurisdictional Issues

■ In her second issue, Chambers asserts the Kaufman county court at law did not have subject matter jurisdiction because title to real property was at issue. Chambers's third issue states:

Does a Justice of the Peace and County Court have jurisdiction in only Kaufman county to rule on titles to real property when two different contracts are presented but neither contract is signed by the seller but proof is presented that the seller accepted a $2,000 down payment and the payments had been made on the land for over 8 months by the Plaintiffs?

■ The JP action is a separate case and not at issue here. We therefore de-

2. Chambers amended her petition throughout the litigation. At the time of trial, her live pleading asserted: breach of contract, fraud, partial performance, specific performance, promissory estoppel, fraudulent inducement, and intentional infliction of emotional an-

guish, and requested exemplary and special damages. Even when the pleadings are afforded the liberal construction to which they are entitled, the pleadings do not contain a trespass to try title claim.

cline to address any alleged error in the JP action. As for the jurisdiction of the county court, whether the trial court has subject matter jurisdiction is a question of law subject to de novo review. *Tex. Nat. Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). A trespass to try title action is the method for determining title to lands. TEX. PROP.CODE ANN. § 22.001 (Vernon 2000); *Martin v. Amerman,* 133 S.W.3d 262, 264–67 (Tex.2004) [3]. District courts generally have exclusive jurisdiction to determine title to real property. *City of Willow Park v. Squaw Creek Downs, L.P.,* 166 S.W.3d 336, 340 (Tex. App.-Fort Worth 2005, no pet.); TEX. GOV'T CODE ANN. § 26.043 (Vernon 2004). But this action did not involve the determination of title. Instead, Chambers claimed the Pruitts breached a contract to sell her the property, and tried the case on this cause of action.

In civil cases where the amount in controversy exceeds $500 but does not exceed $100,000, the county courts at law and the district courts have concurrent jurisdiction. See TEX. GOV'T CODE ANN. § 25.0003(c) (Vernon Supp.2007); *see also* TEX. GOV'T CODE ANN. § 25.1312 (Vernon Supp.2007) (Kaufman county court has same jurisdiction provided by the state constitution and general law for district courts). Therefore, the county court had jurisdiction to decide this breach of contract case. Chambers's second and third issues are resolved against her.

■ Chambers's fourth issue is phrased as follows:

Can a Plaintiff be forced by the district clerks to change the original filing of a case into a Court that the Plaintiff knows does not have subject matter jurisdiction to hear the case in any other county in the state of Texas and then be refused the transfer to the proper court after the issue of jurisdiction is brought to the Court of Appeals?

As we understand the first part of Chambers's issue, Chambers claims when she initiated this action the clerk refused to file the case in the district court and filed the case in the county court instead. The caption on Chambers's original petition reflects that the words "district court" were crossed out and the words "county court at law" were handwritten in their place, but otherwise there is no evidence to establish why the case was filed in the county court. However, even if we assume Chambers' assertion about the clerk's refusal is correct, there is no error. The clerk had the discretion to file the case in county court. The case did not involve trespass to try title. Therefore, the county court and the district court had concurrent jurisdiction. *See* TEX. GOV'T CODE ANN. 25.0003(c) (Vernon Supp.2007). In a case of concurrent jurisdiction, the district clerk is to assign the case to either the district court or the statutory county court in accordance with local administrative rules established by the local administrative judge. *See* TEX. GOV'T CODE ANN. § 25.1312(g) (Vernon Supp.2007). When there is concurrent jurisdiction, statutory county court judges and district judges may also exchange benches, transfer cases, assign each other to hear cases, and otherwise manage their respective dockets. *See* TEX. GOV'T CODE ANN. § 25.1312(m) (Vernon Supp.2007); *see also In re Siemens,* 153 S.W.3d 694, 697 (Tex.App.-Dallas 2005)

**3.** The plaintiff in a trespass to try title action has the burden to establish superior title by showing it has: (1) title emanating from the sovereignty of the soil; (2)a superior title emanating from a common source to which the defendant claims; (3) title by adverse possession; or (4) title by earlier possession coupled with proof possession has not been abandoned. *See Rogers v. Ricane Enterprises, Inc.,* 884 S.W.2d 763, 768 (Tex.1994).

(orig.proc.) (local rules may provide for transfer of cases from district courts to statutory county courts). Therefore, the clerk's assignment of this case to the county court was not error.

■ We are unable to determine the nature of the alleged error described in the second part of the issue. To the extent Chambers seeks to assert error in connection with an alleged refusal to transfer the case, the issue is not briefed and is therefore waived. *See* Tex.R.App. P. 38.1; *Kang v. Hyundai Corp.*, 992 S.W.2d 499, 503 (Tex.App.-Dallas 1999, no pet.). Chambers's fourth issue is overruled.

## C. Issues Related to Trial Court Procedures

■ In her fifth issue, Chambers states:

> Can a County Court at Law in Kaufman County refuse to follow Rule 121 and refuse to accept a written answer that is filed with the Court by the Defendants instead of requiring service of the original citation after the answer is filed?

Both of the Pruitts were named as defendants and both appeared pro se. Based on the docket sheet entries, it appears the trial court required proof of service on Angela Pruitt before setting a hearing on Chambers's request for injunctive relief.[4] Although Angela Pruitt had not been served, she signed a statement her husband filed in response to the lawsuit. The crux of Chambers's argument appears to be that Angela Pruitt's signing of the statement constituted an appearance which dispensed with the necessity of serving her. *See* Tex.R. Civ. P. 121.

While it is true that Tex.R. Civ. P. 121 dispenses with the necessity of serving a defendant who has appeared, Chambers fails to demonstrate how the trial court's action resulted in an improper judgment or prevented her from presenting her case to this court. *See* Tex.R.App. P. 44.1; *see also* Tex.R.App. P. 38.1. Chambers's fifth issue is overruled.

■ In her sixth issue, Chambers contends the trial court erred when it refused to admit deemed admissions into evidence. We disagree.

■ The trial court has broad discretion to permit or deny the withdrawal of deemed admissions as long as it does not act unreasonably, arbitrarily, or without reference to guiding principles. *See Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex.2005). It is axiomatic, however, that requests for admissions must be served and received before a failure to answer will result in deemed admissions. *See Payton v. Ashton*, 29 S.W.3d 896, 898 (Tex.App.-Amarillo 2000, no pet.). Here, there was no evidence the admissions were properly served and received. The request for admissions Chambers sought to admit into evidence was not signed, nor was there a signed certificate of service. Chambers told the court she sent the document to Pruitt by certified mail and received a return receipt green card marked "refused." Pruitt testified she did not receive the admissions. Therefore, there were no deemed admissions, and the trial court did not abuse its discretion when it refused to admit the document into evidence.

## D. The Trial Court's Judgment

We construe Issues Seven, Eight, and Nine as challenges to the trial court's

---

4. Chambers' initial motion for TRO was amended several times and could also be construed to seek a temporary injunction. It is unclear whether the hearing at issue was to be an evidentiary hearing on a temporary injunction. There is also no indication the court was aware that Angela Pruitt may have already entered an appearance.

judgment on the issues of fraud, the statute of frauds, partial performance, and specific performance.[5]

Where, as here, a record contains no findings of fact and conclusions of law, all necessary findings of fact to support the court's judgment are implied. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). When no findings of fact are issued, a reviewing court should presume the trial court resolved all factual disputes in favor of its judgment. *See Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys. L.P.,* 184 S.W.3d 242, 246 (Tex.App.-Houston [1st Dist.] 2005, no pet.). A trial court's conclusions of law are independently evaluated to determine whether the trial court correctly drew legal conclusions from the facts. *Hackenjos v. Hackenjos,* 204 S.W.3d 906, 908 (Tex.App.-Dallas 2006, no pet.).

Chambers' fraud issue is directed to the mobile home sale, but her brief also addresses the proposed sale of the land. To prevail on her fraud claim, Chambers had the burden to prove the essential elements: (1) a material misrepresentation; (2) that was false; (3) made by the speaker with knowledge that it was false or recklessly without any knowledge of the truth and as a positive assertion; (4) made by the speaker with the intent that the other party act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998). Chambers did not plead or prove any of these elements in connection with the sale of the mobile home. The only evidence before the court is that the trailer was sold.

The evidence concerning the sale of the land shows a contract that never came to fruition because the parties could not agree upon its written form or a price. The failure to agree, however, does not constitute fraud. As for the subsequent sale, at one juncture Chambers told the Pruitts she was not interested in buying the land and to "go ahead and list it." Although the Pruitts retained the down payment and Chambers received no land, these facts do not establish fraud. There is no evidence the Pruitts intended to retain the down payment without conveying the land. In fact, the Pruitts' preparation of the contract for deed establishes the opposite.[6] Chambers testified she did not sign the contract for deed because she always prepares her own contracts. There

5. *Issue 7:* "Can a County Court at Law in Kaufman County refuse to address the issue of common-law[sic] fraud being committed by the [Pruitts] upon [Chambers], especially when the [Pruitts] have profited over $15,000.00 in less than a year for the sell [sic] of a mobile home valued at only 3,000.00?"

*Issue 8:* "Does a County Court at Law Judge have the discretion to rule that the acceptance of a down payment of $2,000.00 along with the additional purchase of the water rights to the real property, and the eight (8) months of payments was not enough evidence to prove specific performance and that the [Pruitts] did not commit any type of fraud on [Chambers] and that the [Pruitts] should not be ordered to honor the contractual agreement that they profited almost $15,000.00 from or did the Judge abuse her discretion?"

*Issue 9:* "Can a County Court at Law in Kaufman County defeat the true purpose of the Statute of Frauds and intentionally allow the [Pruitts] to commit a $15,000.00 Fraud upon [Chambers] and the Court recite the Statute of Frauds as its reason for allowing the $15,000.00 Fraud to be committed?"

6. After it became apparent Chambers did not intend to sign the contract, Chambers remained on the land. Testimony at trial also established a utility pole was removed from the land when Chambers was evicted. Therefore, the record does not support the conclusion that the Pruitts "profited over $15,000."

is also no clear evidence that Chambers paid money for which she received nothing in return. Chambers remained on the land after she refused to sign the contract. The records from the JP action that were admitted into evidence show the Pruitts charged rent for the land that Chambers did not pay. The evidence also shows a utility pole was removed from the land when Chambers was evicted. Although neither party offered proof sufficient to quantify the amounts owed and paid, we cannot conclude the trial court erred when it refused to find the Pruitts engaged in fraud.

■■■■■■ A contract for the conveyance of real property must comply with the statute of frauds to be enforceable. *See Lewis v. Adams,* 979 S.W.2d 831, 834 (Tex. App.-Houston [14th Dist.] 1998, no pet.). To comply with the statute of frauds, a contract must be in writing and signed by the person to be charged with the agreement. *See* TEX. BUS. & COM.CODE ANN. § 26.01(a) (Vernon 2002); *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.,* 48 S.W.3d 865, 875 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). Whether a contract falls within the statute of frauds is a question of law. *Vermont Information Processing, Inc. v. Montana Beverage Corp.,* 227 S.W.3d 846, 853 (Tex.App.-El Paso 2007, no pet.). Because the contract Chambers sought to enforce was an alleged oral agreement for the sale of land, the trial court correctly concluded the contract was not enforceable.

■■■■■■ Under the partial performance exception to the statute of frauds, contracts that do not meet the requirements of the statute of frauds but have been partially performed may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Exxon Corp. v. Breezevale, Ltd.,* 82 S.W.3d 429, 439 (Tex.

App.-Dallas 2002, pet. denied). When the oral agreement at issue involves the sale of real property, a well-established three-prong test is applied to determine partial performance. The elements necessary to relieve a parol sale of land from the operation of the statute of frauds include: (1) the payment of the consideration; (2) surrender of possession; and (3) the making of valuable and permanent improvements on the land with the owner's consent, or without such improvements, other facts are shown that would make the transaction a fraud on the purchaser if the oral contract was not enforced. *See Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921); *Birenbaum v. Option Care, Inc.,* 971 S.W.2d 497, 503 (Tex.App.-Dallas 1997, pet. denied); *Boyert v. Tauber,* 834 S.W.2d 60, 63 (Tex.1992). These elements are absent in this case.

Although Chambers made a down payment on the land, there is no evidence she paid the full purchase price. In fact, according to Chambers's testimony, the purchase price kept changing, so there is no clear evidence the parties even agreed on a purchase price. The Pruitts did not surrender possession—Chambers was evicted from the land when it became apparent the sale would not be consummated. Because Chambers failed to prove the essential elements, the trial court did not err when it concluded the partial performance exception to the statute of frauds did not apply.

■■■■ Chambers also appears to argue the trial court erred because it failed to award specific performance. Before a court will order specific performance of a contract for the sale of land, there must be a written agreement expressing the essential terms of the contract with reasonable certainty. *See Rus–Ann Devel. Inc. v. ECGC, Inc.,* 222 S.W.3d 921, 927 (Tex. App.-Tyler 2007, no pet.). Here, there was no written contract to enforce, so the

trial court did not err in its refusal to award a remedy for breach. Chambers's seventh, eighth, and ninth issues are overruled.

### E. Complaints About the Trial Court's Administration of the Case.

In her tenth issue, Chambers states:

> Can a Judge in Kaufman County be the Defense Attorney and the Judge in the same case and can the Judge inform the Defendant when to object to discovery material being admitted and also try to inform the [Pruitts] when to say they don't remember or even ask a question again trying to get a different answer because [the Pruitts] had just admitted that there was a verbal agreement before they accepted the check from [Chambers]?

We construe this issue as a complaint about the trial court's administration of the case. The trial court may exercise reasonable control over the interrogation of witnesses and presentment of evidence. *See* TEX.R. CIV. EVID. 611(a)(2); *Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551, 556 (Tex.App.-Houston [1st Dist.] 1996) *aff'd,* 972 S.W.2d 35 (Tex.1998). The trial court is also vested with great discretion over the conduct of the trial, and this includes intervention to "maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *See Dow*

*Chemical Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). The trial court told Chambers at the inception that an oral contract for the sale of land was not enforceable. Nonetheless, she provided Chambers with the opportunity to attempt to prove her case. Although under no obligation to do so, the record reflects the trial judge periodically had to advise both pro se litigants about the mechanics of the trial process. The trial court also endeavored to confine the litigants to the relevant issues and to maintain civility in the courtroom. Chambers's characterization of the trial court's conduct is not supported by the record. We conclude the trial court did not abuse its discretion and resolve Chambers's tenth issue against her.

In her eleventh issue, Chambers asks this court to determine who is responsible for Chambers's alleged loss.[7] We do not have authority to render advisory opinions. *See First United Bank v. Panhandle Packing and Gasket, Inc.,* 190 S.W.3d 10, 18 (Tex.App.-Amarillo 2005, no pet.); TEX. CONST. Art. V, § 8. Chambers's eleventh issue is overruled.

In her final issue, Chambers seeks to have this court impose liability on the trial judge and Kaufman County.[8] Neither is a party to this lawsuit. Further, in Texas, a judge acting in his or her official capacity is immune from liability for judicial acts performed within the scope of

---

7. **Issue 11:** "Since the County Court at Law ruled on the title to the property and the property has been resold by the [Pruitts], which means that [Chambers] has no way of collecting from the [Pruitts] directly, who is financially responsible to [Chambers] for the financial loss even if the judgment is reversed and the case dismissed and no subpoenaed discovery is allowed?"

8. **Issue 12:** "Is the Judge liable to [Chambers] for the money that [she] has lost because the

Court completely lack[sic] jurisdiction to even hear any case concerning the title or ownership of real property in this state or is the County liable to [Chambers] for the money that [she] has lost because the District Clerks altered the original petition and forced [her] to file the case in a Court that lacked jurisdiction to try title or even rule on specific performance under breach of contract for the sale of real property?"

jurisdiction. *See Freeman v. Wirecut E.D.M., Inc.,* 159 S.W.3d 721, 728 (Tex. App.-Dallas 2005, no pet.). Because the trial court had jurisdiction, the judge has immunity. *See Delcourt v. Silverman,* 919 S.W.2d 777, 781 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Similarly, Kaufman County is immune. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003) (governmental immunity protects political subdivisions of the state); *City of Seagoville v. Lytle,* 227 S.W.3d 401, 408 (Tex.App.-Dallas 2007, no pet.) (same). Chambers's twelfth issue is resolved against her.

### Conclusion

Having resolved all of Chambers's issues against her, we affirm the judgment of the trial court.