Opinion filed May 30, 2025



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00053-CV

_____

## UNITED STATES GYPSUM COMPANY, Appellant

## V.

## BURT LEE BURNETT, Appellee

**On Appeal from the 1st Multicounty Court at Law**
**Nolan County, Texas**
**Trial Court Cause No. 6423**

## M E M O R A N D U M   O P I N I O N

Appellant United States Gypsum Company (U.S. Gypsum) appeals from a default judgment in favor of Appellee Burt Lee Burnett[1] on causes of action for suit to quiet title, trespass to try title, and declaratory judgment regarding a disputed tract

---

[1] Burt Lee Burnett (Burt) died on November 22, 2024, while this case was on appeal. Pursuant to Rule 7.1(a)(1) of the Texas Rules of Appellate Procedure, we will proceed to adjudicate the appeal as if Burt were still alive and will identify Burt as Appellee. *See* TEX. R. APP. P. 7.1(a)(1).

of land (the property). In two issues, U.S. Gypsum challenges (1) the trial court's subject-matter jurisdiction and (2) the trial court's denial of its motion for new trial, which sought to set aside the default judgment. We reverse and render.

*Factual and Procedural History*

This suit arises from litigation filed in a probate proceeding. On June 6, 2018, Sheila Rhea Burnett (Sheila) filed an application to probate S. Dale Burnett's (Dale) will in the Nolan County Court, alleging that Dale passed away on March 9, 2018. On July 25, 2023, Sheila and Dale's son, Burt, moved to transfer the probate case under Section 32.004 of the Texas Estates Code to the 1st Multicounty Court at Law of Nolan County. *See* TEX. EST. CODE ANN. § 32.004 (West 2020). The county court granted the transfer on August 8, 2023.

Burt filed his live pleading in this matter on September 19, 2023, against U.S. Gypsum asserting claims of trespass to try title, to quiet title, and to obtain declaratory relief. Burt alleged that on July 31, 2012, over five years before his father's death, Burt acquired the property via general warranty deed from his parents: Dale and Sheila. That deed was filed in the Nolan County Clerk's Office on July 31, 2012. Burt allowed his family to continue using and enjoying the property, which included allowing his brother and nephew to dispose of scrap tires, metal, and plastic waste on the northern part of the property, next to Sweetwater Creek. On February 22, 2022, however, U.S. Gypsum filed suit in the 32nd District Court of Nolan County against Burt's brother and nephew to recover costs, alleging ownership of the property and asserting claims for negligence, trespass, and nuisance. The parties in the district court litigation agreed to the entry of an injunction.

On November 9, 2023, Burt moved in the transferred probate proceeding for a no-answer default judgment against U.S. Gypsum. The trial court granted Burt's

motion and signed a default judgment on November 30, 2023. U.S. Gypsum filed a motion for new trial on December 20, 2023, alleging that its failure to answer was the result of the registered agent e-mailing notice of service to a paralegal who, at the time, was on medical leave for brain cancer. U.S. Gypsum also alleged that it was the owner of the land in question, and it provided supporting exhibits, including a 1923 deed from U.S. Gypsum's purchase, a title report, and property tax statements of receipt. U.S. Gypsum also alleged that the attorney representing Burt in the 1st Multicounty Court at Law also represented Burt's brother in the ongoing lawsuit in the district court regarding the same property. U.S. Gypsum alleged that the attorney had not contacted U.S. Gypsum about this second suit until after a default judgment was taken, even though it had been in communication with the attorney's office during that period to schedule depositions in the district court case.

Burt opposed the motion for new trial, arguing that U.S. Gypsum received notice of the suit through its registered agent, as acknowledged by U.S. Gypsum in its motion. Burt broadly argued that "US Gypsum wholly fail[ed] to plead facts or present any competent evidence that would support the first element of the *Craddock Test*." *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). Burt similarly asserted that U.S. Gypsum failed to satisfy the remaining two elements of the *Craddock* test. *Id.* Burt moved to strike the affidavit of Brad Nerad, U.S. Gypsum's assistant general counsel, on the basis that Nerad did not specifically state in the affidavit that the facts he relied upon were within his personal knowledge.

The trial court sustained Burt's objections, struck Nerad's affidavit, and denied U.S. Gypsum's motion for new trial.

U.S. Gypsum asserts in its first issue that the 1st Multicounty Court at Law lacked subject-matter jurisdiction to adjudicate Burt's claims for the recovery of real property. In a nutshell, U.S. Gypsum contends that, despite Burt's attempt to cast

his lawsuit as a probate proceeding, the 1st Multicounty Court at Law lacked subject-matter jurisdiction to adjudicate a title dispute to real property, and that the action could only have been brought in district court.

*Standard of Review*

"[S]ubject-matter jurisdiction is never presumed and cannot be waived." *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 20 (Tex. 2024) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993)). "[T]he issue can 'be raised for the first time on appeal by the parties or by the court,' [and] a court is *obliged* to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358–59 (Tex. 2004) (citations omitted)).

Whether a trial court has subject-matter jurisdiction over a case is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff bears the burden to allege facts that affirmatively establish the trial court's subject-matter jurisdiction to hear and decide a case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Abdullatif v. Erpile, LLC*, 460 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "In assessing whether a court has subject matter jurisdiction over particular claims, we construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings except to the extent negated by evidence." *San Jacinto River Auth. v. Ogletree*, 594 S.W.3d 833, 838 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Miranda*, 133 S.W.3d at 226–27). "Lack of subject-matter jurisdiction is a nonwaivable defect and can be raised at any point of an appeal, by any litigant or by the court sua sponte, regardless of whether the complaint was preserved in the trial court." *Tex. Dep't of Pub. Safety v. Jenkins*, 262 S.W.3d 811, 812 (Tex. App.—Eastland 2008, no pet.).

4

The Texas Supreme Court has set out "the five-step process" for determining the jurisdiction of a trial court.

> [R]ecourse must be had first to the Constitution, second to the general statutes establishing jurisdiction for that level of court, third to the specific statute authorizing the establishment of the particular court in question, fourth to statutes creating other courts in the same county (whose jurisdictional provisions may affect the court in question), and fifth to statutes dealing with specific subject matters (such as the Family Code, which requires, for example, that judges who are lawyers hear appeals from actions by non-lawyer judges in juvenile cases).

*In re United Services Auto. Ass'n*, 307 S.W.3d 299, 303–04 (Tex. 2010) (quoting Office of Court Administration, *Subject-Matter Jurisdiction of the Courts*, at 1). Courts should be hesitant to construe a statute in a manner that curtails a trial court's jurisdiction absent manifestation of legislative intent to that effect. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020).

We review questions of statutory interpretation de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Our primary objective is ascertaining and giving effect to the Legislature's intent. *City of Stephenville v. Belew*, 692 S.W.3d 347, 362 (Tex. App.—Eastland 2024, pet. denied). To do so, we examine the plain meaning of the statute's language and read it as a whole rather than isolated portions of it. TEX. GOV'T CODE ANN. § 311.011 (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Belew*, 692 S.W.3d at 362 (first citing *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389–90 (Tex. 2014) then citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). "That is, we read statutes contextually to give effect to every word, clause, and sentence because every word and phrase is presumed to have been used intentionally, with a meaning and a purpose." *Belew*, 692 S.W.3d at 362.

"If the statute is clear and unambiguous, we must read the language according to its common meaning 'without resort to rules of construction or extrinsic aids.'" *Id.* (quoting *Crosstex Energy Servs.*, 430 S.W.3d at 389); *but see* GOV'T § 311.023 (permitting courts to consider legislative history and other construction aids regardless of ambiguity). "And if a statute is unambiguous, we adopt the interpretation that is supported by the statute's plain language unless such an interpretation would yield an absurd result." *Id.* (citing *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). "A statute is ambiguous if its words are susceptible to two or more reasonable interpretations and we cannot discern legislative intent from the language alone." *Id.* (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)).

*Applicable Law*

In Texas, district courts have exclusive and original jurisdiction in all cases unless otherwise designated by the Texas constitution or by other law. TEX. CONST. art. V, § 8; GOV'T § 24.007(a) (West 2023). District courts are presumed to have subject-matter jurisdiction unless otherwise shown; "[t]hus, all claims are presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000).

The 1st Multicounty Court at Law's specific jurisdictional statute, Section 25.2702, provides that, "[i]n addition to the jurisdiction provided by Section 25.0003," the court has concurrent jurisdiction with the district court, but only in family law cases and proceedings and in felony criminal cases. GOV'T § 25.2702(a) (West Supp. 2024); *see id.* 25.0003(a) (noting that statutory county courts have jurisdiction over the same causes and proceedings as constitutional

6

county courts[2]); *id.* § 26.042 (setting out civil jurisdiction for constitutional county courts). Because Section 25.2702 does not provide that the court has concurrent jurisdiction with the district court in civil cases up to a certain amount in controversy, nor does it otherwise confer jurisdiction over real property title disputes, the 1st Multicounty Court at Law is subject to the county courts' jurisdictional limitations set forth in Section 26.043. *See* GOV'T § 26.043 (West 2019); *cf. Ditech Servicing, LLC v. Perez*, 669 S.W.3d 188, 194 (Tex. 2023) ("[T]he limitations on county courts necessarily apply to county courts at law" absent an independent jurisdictional grant.); *compare* GOV'T § 25.1102 (Hidalgo County Court at Law has concurrent jurisdiction with the district court in civil cases in which the matter in controversy does not exceed $750,000, regardless of type.), *with* 25.2702 (1st Multicounty Court at Law only has concurrent jurisdiction with the district court in family law cases and proceedings and in felony criminal cases.). Consequently, the 1st Multicounty Court at Law, like other statutory county courts, does not have jurisdiction to determine real property title disputes. *See* GOV'T § 26.043(8) (county courts lack jurisdiction over suits for the recovery of land); *Ditech Servicing*, 669 S.W.3d at 191, 194; *In re Riley*, 339 S.W.3d 216, 220 (Tex. App.—Waco 2011, no pet.) (noting that county courts lack jurisdiction over suits to quiet title); *Chambers v. Pruitt*, 241 S.W.3d 679, 684 (Tex. App.—Dallas 2007, no pet.) ("District courts generally have exclusive jurisdiction to determine title to real property."). "Absent a compelling showing to the contrary, we presume that remedies remain intact and that the jurisdiction of a district court—our state's sole

---

[2]"The term 'county courts' as used in [Section 25.0003] refers to the constitutional county courts." *Dailing v. State*, 546 S.W.3d 438, 445 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

7

court of general jurisdiction—remains undisturbed." *S.C. v. M.B.*, 650 S.W.3d 428, 436 (Tex. 2022).

However, the Texas Estates Code provides statutory county courts with jurisdiction over real property in certain situations related to probate proceedings:

(a) For purposes of [the Estates Code], in a county in which there is no statutory probate court or county court at law exercising original probate jurisdiction, a matter related to a probate proceeding includes:

(1) an action against a personal representative or former personal representative arising out of the representative's performance of the duties of a personal representative;

(2) an action against a surety of a personal representative or former personal representative;

(3) a claim brought by a personal representative on behalf of an estate;

(4) an action brought against a personal representative in the representative's capacity as personal representative;

(5) an action for trial of title to real property that is estate property, including the enforcement of a lien against the property; and

(6) an action for trial of the right of property that is estate property.

EST. § 31.002(a).

The independent executor of the estate is its personal representative. EST. § 22.017 (defining "independent executor"). Ordinarily, the personal representative of the estate of a decedent is the only person entitled to sue for the recovery of property belonging to the estate. *Moody v. Moody*, 613 S.W.3d 707, 718 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998); *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971); *Chandler v. Welborn*, 294 S.W.2d 801, 806 (Tex. 1956)); *In re Est. of Preston*, 346 S.W.3d 137, 163 (Tex. App.—Fort Worth 2011, no pet.). There is an exception

to this general rule, however, when the personal representative cannot, or will not, bring the suit or when the personal representative's interests are antagonistic to those of the estate. *Moody*, 613 S.W.3d at 718 (citing *Chandler*, 294 S.W.2d at 806); *Est. of Preston*, 346 S.W.3d at 163.

The Fourteenth Court of Appeals has construed Section 31.002 as an exhaustive list of "matter[s] related to a probate proceeding." *See In re Hannah*, 431 S.W.3d 801, 809–10 (Tex. App.—Houston [14th Dist.] 2014, no pet.). There, the court noted that the county court lacked jurisdiction over the plaintiff's claim because it was solely for money damages and did not seek title to "property that is estate property." *Id.* at 810; *see* EST. § 22.012(1) (defining "estate"); *Mariner Health Care of Nashville, Inc. v. Robins*, 321 S.W.3d 193, 200–01 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("When a person dies, all of the decedent's real and personal property become part of an estate, including any actual or potential cause of action."). The Twelfth Court of Appeals held similarly and concluded that Section 31.002 did not expand the county court's jurisdiction to cover non-probate assets. *In re Est. of Rushing*, 644 S.W.3d 383, 388 (Tex. App.—Tyler 2022, pet. denied) (determining that the county court lacked jurisdiction to create constructive trust for a life insurance policy). The reasoning of the court in *Estate of Rushing* is instructive because, as here, "this is not a claim against the personal representative or his surety based on the performance of his duties in his capacity as personal representative, nor is it a claim brought on behalf of an estate for trial of title to real property or other estate property." *Id.* at 388.

A probate court may exercise pendent and ancillary jurisdiction over non-probate claims as necessary to promote judicial efficiency and economy. EST. § 32.001(b). "Typically, probate courts exercise ancillary or pendent jurisdiction when a close relationship exists between the non-probate claims and the claims

against the estate." *In re Est. of Hallmark*, 629 S.W.3d 433, 438 (Tex. App.—Eastland 2020, no pet.) (quoting *Narvaez v. Powell*, 564 S.W.3d 49, 57 (Tex. App.—El Paso 2018, no pet.)). The fundamental question when reviewing a probate court's exercise of pendant and ancillary jurisdiction is whether there was a close relationship between the non-probate claims and the probate proceeding such that the probate court's exercise of jurisdiction will aid it in the efficient administration of the estate. *Id.* (citing *Schuchmann v. Schuchmann*, 193 S.W.3d 598, 603 (Tex. App.—Fort Worth 2006, pet. denied)). "A probate court has jurisdiction 'to resolve ancillary claims against third parties only to the extent that such claims were necessary to resolve claims within its original jurisdiction.'" *Id.* (quoting *Goodman v. Summit at W. Rim, Ltd.*, 952 S.W.2d 930, 934 (Tex. App.—Austin 1997, no pet.)).

*Analysis*

U.S. Gypsum argues that, while subsections 31.002(a)(5) and (6) of the Estates Code require that the property be "estate property," the disputed tract is not estate property because the property was allegedly obtained by Burt in 2012, over five years before Dale passed away. Burt advances three arguments for his position that the 1st Multicounty Court at Law possessed jurisdiction over his claims: (1) subsections 31.002(a)(3), (5), and (6) provide the trial court with jurisdiction; (2) Section 31.002's use of the word "including" before the enumerated items makes it a non-exhaustive list; and (3) the trial court possessed pendant and ancillary jurisdiction because if U.S. Gypsum "were to prevail on its assertion and have a declaration that the 2012 Deed to [Burt] is void, the issue of title to the Property remains." U.S. Gypsum counters by pointing out that subsection 31.002(a)(3) provides jurisdiction for suits brought by the estate's personal representative—

10

which has not happened here[3]—and that the trial court lacked pendant and ancillary jurisdiction because Burt's suit does not involve the settlement, partition, or distribution of Dale's estate.  For the reasons stated below, we agree with U.S. Gypsum.

First, subsection 31.002(a)(3) provides for jurisdiction for "a claim brought by a personal representative on behalf of an estate."  EST. § 31.002(a)(3).  It is undisputed that Sheila is the personal representative of Dale's estate.  However, it was not Sheila, individually or in her capacity as personal representative, that brought the claim; rather, it was Burt.  Accordingly, subsection 31.002(a)(3) is inapplicable and does not provide the 1st Multicounty Court at Law with subject-matter jurisdiction to hear and decide this case.  *See* EST. 31.002(a)(3); *Abdullatif*, 460 S.W.3d at 691.

Further, Burt's own pleadings defeat the trial court's jurisdiction under subsection 31.002(a)(5) and (6).  *See Miranda*, 133 S.W.3d at 226–27; *Abdullatif*, 460 S.W.3d at 691.  According to Burt's live pleading, his first amended petition, he allegedly acquired title to the disputed property from Sheila and Dale in 2012, over five years before Dale's death and the probate of his estate.  As used in subsections 31.002(a)(5) and (6), the term "estate property" refers to property owned by the decedent at the time of his death and subject to distribution through probate. *See* EST. § 31.002(a)(5), (6); GOV'T § 311.011; *Belew*, 692 S.W.3d at 362.  Burt's pleading makes no allegation that Sheila, neither individually nor as the executor of the estate, ever claimed that the property was part of the estate or had not been conveyed to Burt in 2012, or contended that there was any reversion of that conveyance.  Importantly, Burt prayed for no declaration as to the estate, and sought

---

[3]Moreover, it appears that Burt was not a beneficiary of the estate in that Dale's will bequeathed all of his estate assets to Shelia, who survived him.

11

no damdages or remedy from it. As such, the disputed property is not "estate property" as Burt suggests, according to his own pleadings. *See* Est. § 31.002(a)(5), (6); *In re Hannah*, 431 S.W.3d at 810 (holding that the plaintiff did not seek "estate property" when they sought monetary damages from individual defendants, not the estate); *see also D'Olivio v. Hutson*, No. 05-20-00969-CV, 2022 WL 2800836, at *2 (Tex. App.—Dallas July 18, 2022, pet. denied) (mem. op.) (holding that because the property was conveyed before the decedent's death, "[t]he property, therefore, passed outside of the estate and is not a part of, or related to, the probate proceeding") (citing *Wallace v. Wallace*, No. 05-17-00447-CV, 2017 WL 4479653, at *4 (Tex. App.—Dallas Oct. 9, 2017, no pet.) (mem. op.) (probate court did not have exclusive jurisdiction where former wife was seeking to partition property as a tenant in common and not as an heir)). As such, subsections 31.002(a)(5) and (6) are inapplicable and do not afford the trial court subject-matter jurisdiction to hear and decide the case. *See* Est. § 31.002(a)(5), (6); *Abdullatif*, 460 S.W.3d at 691.

We need not directly opine as to Burt's argument that Section 31.002's use of the word "including" before the enumerated items establishes a non-exhaustive list because Burt's claims are not otherwise "related to a probate proceeding." *See* Est. § 31.002(a); *see also* Gov't § 311.005(13) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."). Burt relies on decisions from three of our sister courts to support his position that his suit is "related to a probate proceeding"; however, those cases are inapposite for the reasons explained below.

In *Saenz v. Saenz*, the decedent executed a will in 1986 and executed three deeds relating to real property within the will in 1987, 1988, and 1992. 49 S.W.3d 447, 448 (Tex. App.—San Antonio 2001, no pet.). Plaintiffs, presumably those who

purchased or received the three deeds, filed suit against the estate's independent executor. *Id.* The procedural and factual history of this case is scant, but a dispute arose whether the estate was the owner of the property or the other individuals. *Id.* at 448–49. The Fourth Court of Appeals affirmed the district court's dismissal of the plaintiffs' petition, holding that "[t]itle to the land conveyed both by [the decedent]'s will and by subsequent deeds is a matter appertaining to [the decedent]'s estate." *Id.* at 449. Thus, this case involved a dispute as to whether the estate owned the property such that it could distribute it. *See id.* at 448–49.

In *In re Frank Schuster Farms*, *Incorporated*, a dispute arose relating to tracts of land that heirs believed to have been owned by Schuster Farms, a corporation. No. 13-10-00225-CV, 2010 WL 2638481, at *1 (Tex. App.—Corpus Christi–Edinburg June 29, 2010, no pet.) (mem. op.). The decedent had previously transferred several tracts of land that he owned individually to Schuster Farms but not all. *Id.* After the decedent passed, his estate was divided amongst his heirs, his three children, and settled by arbitration. *Id.* However, sometime later, the heirs discovered that a portion of the property had not been distributed under the estate even though it was owned by decedent individually because they had believed that it belonged to the corporation. *Id.* One of their heirs filed suit in the probate court, which transferred it to the district court at the motion of the executor. *Id.* The Thirteenth Court of Appeals held that the probate court, not the district court, had jurisdiction because, although the property was not distributed in the original probate, it should have been, and thus an ownership dispute existed between the corporation, estate, and would-be heirs. *Id.* at *6. Accordingly, the property was "estate property" because the decedent owned the property at the time of his death, and it was subject to distribution through his estate, regardless of the heirs mistaken belief that it was owned by Schuster Farms. *See id.* at 6–7.

13

In *Barton v. Buchanan*, a property-line dispute arose between two tracts of land owned by two brothers who had since passed. No. 03-02-00596-CV, 2003 WL 21939725, at *1 (Tex. App.—Austin Aug. 14, 2003, no pet.) (mem. op.). The brothers acquired the two adjoining tracts, which had been subdivided, and merged them into common ownership where each brother held an undivided one-half interest. *Id.* The brothers later executed a partition deed, again splitting the property in two, with each brother taking one half. *Id.* After their passing and during the administration of their estates, a dispute arose regarding the property line separating the two tracts. *Id.* While the estates were pending, one of the heirs filed a trespass-to-try-title suit in a statutory county court. *Id.* The Third Court of Appeals held that the statutory county court possessed jurisdiction to determine the trespass-to-try-title suit, despite the fact that the properties had already been distributed to the heirs, because the heirs received the property through probate and each estate "ostensibly sought to distribute the same piece of property to different heirs" through probate. *Id.* at *3–4. Accordingly, this property was also "estate property."

Because each of these cases involved "estate property," they do not support Burt's contention that his suit is nonetheless "related to a probate proceeding." *See* EST. § 31.002(a). To be clear, Burt's suit filed in the 1st Multicounty Court at Law does not identify any circumstance that would impact the estate as his pleadings allege that the property belongs to him individually. None of his pleaded causes of action nor his requested relief would affect the estate or its distribution and settlement; resolution of his suit requires no involvement from or impact to the estate. *See id.*

Finally, Burt argues that the trial court possessed pendant and ancillary jurisdiction because if U.S. Gypsum succeeded on a claim that Burt's 2012 deed was void, the issue of title to the property remains. Burt argues that "[t]rying the

boundary line dispute and the validity of the 2012 Deed in one lawsuit no doubt promotes judicial efficiency and economy." These arguments do not confer jurisdiction on the 1st Multicounty Court at Law to hear his claims that, by his own pleadings, do not relate to the estate. Nothing in the pleadings indicate that the boundary line dispute would be against the *estate*. *See Abdullatif*, 460 S.W.3d at 691 (holding that a party must file pleadings that affirmatively demonstrate the trial court's subject-matter jurisdiction). Moreover, if Burt were to succeed on his claims, he would be the owner of the property, not the estate; similarly, if he failed, U.S. Gypsum would have superior title to the property, not the estate. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a) (West 2020) (A person with rights under a deed, contract, or instrument "may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder."); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("A suit to clear title or quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property."); *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 90 (Tex. App.—Eastland 2021, no pet.) ("The plaintiff in a trespass to try title action is required to prove its title by proving (1) a regular chain of conveyances from the sovereign to the plaintiff, (2) a superior title to that of the defendant out of a common source, (3) title by limitations, or (4) prior possession that has not been abandoned."). Accordingly, Burt's claims do not bear a close relationship with the probate proceeding such that the probate court's jurisdiction would aid in the efficient administration of the estate. *See Hallmark*, 629 S.W.3d at 438.

Because Burt's claimed grounds for jurisdiction in the 1st Multicounty Court at Law do not apply to the claims or disputes at hand, we sustain U.S. Gypsum's first

issue; it is the district court that has exclusive jurisdiction to determine this action. *See* TEX. CONST. art. V, § 8; GOV'T § 26.043 (8) ("A county court does not have jurisdiction in a suit for the recovery of land."); *Chambers*, 241 S.W.3d at 684. Because the 1st Multicounty Court at Law lacked subject-matter jurisdiction to hear and decide this case, its default judgment in favor of Burt is void and must be set aside. As such, we need not address U.S. Gypsum's second issue in which it argues that the trial court abused its discretion in denying its motion for new trial. *See* TEX. R. APP. P. 47.1.

### *This Court's Ruling*

We reverse the trial court's judgment and render judgment dismissing the case for want of subject-matter jurisdiction. *See id.* R. 43.2(c).


W. BRUCE WILLIAMS
JUSTICE


May 30, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

16